IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) 8:04CV |
| vs. | ) **VERIFIED COMPLAINT** |
| | ) **FOR FORFEITURE** |
| $90,000.00 IN UNITED STATES CURRENCY, | ) |
| Defendant. | ) |

COMES NOW the Plaintiff, United States of America, and for its cause of action against the Defendant, states and alleges as follows:

1. The Court has jurisdiction of this matter pursuant to Title 28, United States Code, Sections 1345, 1355 and 1395, and pursuant to Title 21, United States Code, Section 881.

2. The Defendant is $90,000.00 in United States Currency.

3. The Defendant property is now and will be during the pendency of this action in the judicial district of the State of Nebraska.

4. On or about April 5, 2004, the Defendant property was seized by deputies of the Douglas County Sheriff's Office; said seizure took place on land, within the District of Nebraska. Immediately after said seizure, administrative forfeiture proceedings were instituted by the United States Drug Enforcement Administration.

5. Manuel Razo has filed a Claim for ownership, pertaining to said Defendant property, with the United States Drug Enforcement Administration.

8. On April 5, 2004, Manuel Razo was in possession of the Defendant property, as proceeds traceable to the exchange of a controlled substance, or alternatively, the Defendant property was used or was intended to be used to facilitate the transportation, sale, receipt, possession, concealment or distribution of a controlled substance, as more particularly described as follows:

   a. On Monday, April 5, 2004, at approximately 8:39 p.m., Douglas County Sheriff's Deputies Ted Fitzsimmons and Matt Murphy were working on I-80 westbound and observed two vehicles following a semi-tractor trailer passenger car too closely. The two cars appeared to be traveling together, by making the same lane movements. Deputy Fitzsimmons observed a green 2004 Chrysler 300M, bearing Nevada license plate 357 RBU, westbound on I-80 near 60th Street following the semi-tractor tanker too closely. Deputy Murphy observed a silver 2002 Audi 4-door sedan, bearing California plates, following the Nevada-plated green Chrysler 300M too closely. Deputy Fitzsimmons also observed the green Chrysler make an improper lane change by not signaling 100 feet in advance near 84th Street & I-80. Deputy Fitzsimmons conducted a traffic stop on the green Chrysler near 90th Street & I-80, westbound. Deputy Murphy stopped the silver 2002 Audi near 84th Street & I-80, westbound.

   b. Upon approaching the driver's side doo,r Deputy Fitzsimmons made contact with the driver, Manuel M. Razo, and asked him for his driver's license, vehicle registration and if he would step to the rear of the vehicle. While Manuel Razo was obtaining the requested documents, Deputy Fitzsimmons

observed a faint odor of air-freshener, an atlas opened to the state of Iowa, an energy drink and, in the back seat, a black suit case. Deputy Fitzsimmons spoke with Manuel Razo and explained that he was stopped for following too closely and an improper lane change. Manuel Razo advised Deputy Fitzsimmons the vehicle was a rental car out of Las Vegas, Nevada; he provided a rental agreement in Mr. Razo's name. Deputy Fitzsimmons then began to ask Manuel Razo about his travel plans. Manuel Razo told Deputy Fitzsimmons he was returning to Las Vegas from Cleveland, Ohio, where he had stay with a buddy, "Jim", for about one week. He further stated the reason for the trip was to purchase a bar, but it did not work out because of previous debt by the current owner and the liquor license was going to be $30,000.00. Manuel Razo stated he was in the real estate service and when asked what the name of his real estate company was, Manuel Razo stated that he buys houses to fix them up to resale. Manuel Razo further added that a high school friend's grandmother owns Century 21 in Las Vegas, Nevada, and he works for her. All of these responses appeared to Deputy Fitzsimmons as rehearsed to establish his possible financial stability. Deputy Fitzsimmons also asked Manuel Razo if he was traveling with anyone else; he responded, "no," while looking back towards the east.

c. Deputy Fitzsimmons then had Manuel Razo wait in his vehicle while Deputy Fitzsimmons conducted record checks. Deputy Fitzsimmons contacted E.P.I.C. Manuel Razo's name came back with two separate entries for

attempting to negotiate the sale/purchase of 50 pounds and 75 pounds of marijuana with a Drug Enforcement Administration informant. Deputy Fitzsimmons then requested back up. Deputy Fitzsimmons then contacted Deputy Murphy, who advised his driver had a similar story regarding travel itinerary, and that he also said he was traveling alone. Once Deputy Fitzsimmons' back up arrived, he made contact Manuel Razo at the rear of his vehicle. Deputy Fitzsimmons wanted to clarify Mr.Razo's travel plans again. Manuel Razo told Deputy Fitzsimmons he had left Las Vegas about 1 - 1 ½ weeks ago. This statement did not match the rental agreement date of March 30, 2004.

d.  Deputy Fitzsimmons then asked Manuel Razo if there was any illegal contraband in the vehicle, specifically, any weapons or stolen items, marijuana, methamphetamine, cocaine, heroin, or large amounts of currency. Manuel Razo got excited regarding marijuana, and stated, "No, hell no", while looking away from the car. Manuel Razo responded ,"No way", to methamphetamine, and, "No", to cocaine and heroine. When Deputy Fitzsimmons asked about large amounts of currency, Manuel Razo quickly responded "Yes, 100." Deputy Fitzsimmons asked Manuel Razo to clarify "100"; he responded, "$100,000.00." Manuel Razo said the currency was in the suitcase. Deputy Fitzsimmons then asked for permission to search Manuel Razo's vehicle. Mr.Razo interrupted Deputy Fitzsimmons by saying it was his money and he could prove it. Then Manuel Razo began to pull bank

4

deposit slips from his wallet which indicated he had approximately $45,000.00 to $55,000.00 in an account. Deputy Fitzsimmons again asked for permission to search; it was granted. Deputy Fitzsimmons further explained to Manuel Razo that he could say "No" to the search, but Manuel Razo still gave permission to search the vehicle.

e.  Deputy Fitzsimmons had Manuel Razo step back with Deputy Hearty while Deputy Fitzsimmons began searching the vehicle. Deputy Fitzsimmons opened Manuel Razo's black suitcase in the back seat and located a pair of white boxer briefs wrapped around a "Fruit Loops" cereal box that appeared to be re-glued to appear as an unopened box of cereal. Deputy Fitzsimmons opened a corner of the box--that was extremely heavy for the contents to be cereal--and located bundles of United States currency inside of it. Deputy Fitzsimmons then placed Manuel Razo in custody and detained him for further investigation of the currency. Young's Towing was requested to transport the vehicle to the Douglas County Sheriff's Office for a continued search of the vehicle.

f.  Deputy Fitzsimmons verbally advised Manuel Razo of his constitutional rights per <u>Miranda</u> at 9:25 p.m. in the presence of Deputy Hearty. Manuel Razo waived his rights. Deputy Fitzsimmons asked if he was traveling with anyone else; he stated, "no", then changed his mind and said, "Yes, my cousin by my mother's side was behind me."

g. At the Douglas County Sheriff's Office, the vehicle was further searched and the contents photographed by Criminalistics. Deputy Fitzsimmons located one cell phone that was not working and a white envelope containing a hand written 2 ½ page document with directions from Las Vegas to Cleveland and back to Las Vegas. The note stated, "Don't drive at night past 11:00 p.m., don't tailgate, use cruise control. You should make Nebraska border around 11:00 p.m. Stop. Don't drive past 11:00 p.m. Especially in Nebraska."

h. Deputy Jones interviewed Manuel Razo an the Douglas County Sheriff's Office. Deputy Jones presented Manuel Razo with a disclaimer and explained about the form. Manuel Razo again stated the currency was his and could prove it. Lieutenant Paulson notified the Drug Enforcement Administration of the currency seizure.

i. Deputy Murphy then transported the cereal box containing the currency to the locker room for a K-9 sniff, using his police service dog, "Gizmo". K-9 Gizmo is certified in the state of Nebraska as a Patrol/Narcotics Detector dog. K-9 Gizmo is trained to detect the odor of marijuana, cocaine, heroine and methamphetamine. K-9 Gizmo is an aggressive indication dog and trained to bark, bite and/or scratch once he detects the odor of the listed narcotics. K-9 Gizmo was deployed in the locker room without the presence of narcotics. K-9 Gizmo was taken around the lockers two times; he did not indicate the presence of narcotic odor. Un-circulated currency was placed in one locker, and the suspect currency, still inside the cereal box, was place in another,

6

          separate locker. K-9 Gizmo was taken by the un-circulated currency twice and did not indicated the presence of narcotic odor. K-9 Gizmo was then taken past the suspect currency location once and indicated to the presence of narcotic odor by scratching at the locker where the suspect currency was hidden.

j.    At approximately 2:10 a.m., on April 6, 2004, Deputy Fitzsimmons spoke with Manuel Razo to advise him that he was being released along with the rental car. Deputy Fitzsimmons had Manuel Razo sign the impound release form and did not mention anything about the currency. Manuel Razo never asked about the currency during the signing of the form. Manuel Razo was then given a receipt for the currency, and again said nothing. Manuel Razo was acting excited to be leaving. Deputy Fitzsimmons showed Manuel Razo to his vehicle, and released him at 2:15 a.m.

9. By reason of the foregoing, the Defendant property was used or was intended to be used to commit or facilitate the commission of violations of Title 21, United States Code, Sections 841 and 844. The Defendant property is therefore subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(6), and no other property rights should exist in it.

    WHEREFORE, the Plaintiff, United States of America, prays the Defendant property be proceeded against for forfeiture in accordance with the laws and regulations of the rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States

of America and disposed of according to law and regulation; that the costs of this action be assessed inst the Defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

MICHAEL G. HEAVICAN
United States Attorney

By: _____
NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
(402) 661-3700

## VERIFICATION

STATE OF NEBRASKA )
) ss.
COUNTY OF DOUGLAS )

Pursuant to Rule C(2), Supplemental Rules of Certain Admiralty and Maritime Claims, Assistant United States Attorney for the District of Nebraska, Nancy A. Svoboda, being first duly sworn, deposes and states that the facts set forth herein are true and correct according to the best of her knowledge and belief.

_____
NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney

Subscribed and sworn to before me this 6th day of October, 2004.



_____
Notary Public

Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and that it be calendared accordingly.

_____
NANCY A. SVOBODA
Assistant U.S. Attorney

9